UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DOUGLAS E. KAMPFER,

                    Plaintiff,

        -against-                                    1:18-CV-0007 (LEK/ATB)

RICHARD ARGOTSINGER, *et al.*,

                    Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

Plaintiff Douglas Kampfer lives in Mayfield, New York ("Mayfield" or the "Town"),

where defendant Richard Argotsinger serves as Town Supervisor and sits on the Mayfield Town

Board (the "Town Board" or the "Board") along with defendants Vincent Coletti, Jack Putman,

Thomas Ruliffson, and Steven Van Allen (collectively, "Defendants"). Dkt. No. 39 ("Amended

Complaint"). Plaintiff sues under 42 U.S.C. § 1983, alleging that Defendants violated his

constitutional rights during a series of events surrounding his appointment and tenure as

Mayfield's Dog Control Officer. Id. He seeks declaratory relief and damages. Id. at 1, 2, 12.

Defendants have moved for summary judgment under Federal Rule of Civil Procedure

("FRCP") 56. Dkt. Nos. 86 ("Defendants' SJ Motion"); 86-19 ("Defendants' Memorandum");

86-20 ("Defendants' Statement of Material Facts" or "Defendants' SMF"). Plaintiff has opposed

Defendants' motion and cross-moves for summary judgment in his own right. Dkt. Nos. 87

("Plaintiff's SJ Motion"); 87-2 ("Plaintiff's Statement of Material Facts" or "Plaintiff's SMF");

87-3 ("Plaintiff's Memorandum"); 87-4 ("Response to Defendants' SMF"). Defendants have

filed a reply in further support of their summary judgment motion and opposing Plaintiff's

summary judgment motion. Dkt. No. 88 ("Defendants' Reply"). For the following reasons, the Court grants Defendants' summary judgment motion and denies Plaintiff's.

## II.    BACKGROUND

### A.  Factual Background

The following facts are taken primarily from Defendants' Statement of Material Facts, as Plaintiff admitted most of the facts in Defendants' SMF, see Resp. to Defs.' SMF, and Plaintiff's purported SMF offered in support of his own summary judgment motion is two pages and consists largely of legal conclusions, see Pl's. SMF. The facts are undisputed unless otherwise noted.

Until his retirement in 2015, Plaintiff worked as Town of Mayfield cemetery caretaker, a position to which he was appointed annually by the Town Board. Defs' SMF ¶¶ 1, 2. In Mayfield, several town positions are filled each year upon appointment of the board at an annual "organizational meeting" in early January. Id. ¶¶ 9, 24–27, 30–31. Though Plaintiff denies that he attended any "organizational meetings," he admits that, in connection with the cemetery caretaker role, he attended seven January Board meetings in which the Board would authorize his position as cemetery caretaker. Id. ¶ 9.

In June of 2017, Plaintiff applied for a position as Mayfield's Dog Control Officer. Id. ¶ 3. For at least several years prior to 2017, Mayfield's Dog Control Officer had been appointed to one-year terms by the Town Board at the annual organizational meeting.[1] Id. ¶¶ 24–27. For example, a woman named Jane Potts served as Dog Control Officer in 2014, and after her

---

[1]  Defendants also point out that there is no evidence in the record that anyone has ever been appointed Mayfield Dog Control Officer for more than a one-year term. Id. ¶ 64.

appointment expired at the end of the year, the Town Board appointed a woman named Nancy Parker in her stead. Id. ¶¶ 24–25. Parker was reappointed several times. Id. ¶¶ 26–27.

On January 5, 2017, at that year's organizational meeting, the Board appointed Parker to the Dog Control Officer position for a one-year term expiring on December 31, 2017. Id. ¶ 27. Then, in February 2017, Parker was appointed to the position of Mayfield town clerk. Dkt. No. 86-18 ("Parker Declaration") ¶ 4. In order to focus full-time on her new duties, Parker resigned as Dog Control Officer, effective August 11, 2017. Id. ¶ 8; Defs.' SMF ¶¶ 28, 29. Prior to the effective date of Parker's resignation, the Town Board began looking for a replacement dog control officer. After the Board received Plaintiff's application for the position in June, they appointed him dog control officer at the July 11, 2017 Board meeting. Id. ¶¶ 15, 29.

And here lies the crux of this dispute: the duration of Plaintiff's appointment. Defendants insist that Plaintiff was appointed merely to serve out the remainder of Parker's term, i.e., from August 11, 2017 to December 31, 2017, id. ¶ 29, whereas Plaintiff understood his appointment to be permanent, id. ¶ 59. Plaintiff understood this to be so because he never received a letter of appointment clarifying the duration of his term in office, id. ¶ 60.[2] In support of his position, Plaintiff points out that the minutes from the July 11, 2017 board meeting say only that the "Board approve[d] the appointment of Douglas Kampfer as Dog Control Officer" and say nothing about a duration of employment. Pl.'s Resp. to Defs.' SMF ¶ 29. However, in their sworn declarations, Defendants state that they intended and understood Plaintiff's appointment to last only to the end of Parker's term. Dkt. Nos. 86-13 ("Argotsinger Declaration") ¶¶ 16–17; 86-

---

[2] For their part, Defendants point out that Plaintiff never requested a letter of appointment. Id. ¶ 56.

14 ("Putnam Declaration") ¶¶ 15–16; 86-15 ("Van Allen Declaration") ¶¶ 15–16; 86-16

("Ruliffson Declaration") ¶¶ 15–16; 86-17 ("Coletti Declaration") ¶¶ 15–16.

Further, Defendants point out that, after receiving his appointment as Dog Control

Officer, Plaintiff signed an "Oath of Office" form that, as submitted to the Court, lists the dates

of Plaintiff's appointment "from 8/11/17 to 12/31/17." Defs.' SMF ¶¶ 16–18; Dkt. No. 86-6

("Minutes of July 11, 2017 Board Meeting") at 6. But Plaintiff insists that the dates were not

written on the oath form when he signed it. Dkt. No. 86-10 ("Kampfer Deposition") at 160.

Regardless, it is undisputed that no town official told Plaintiff "that there was going to be any

change regarding the Dog Control Officer position," Defs.' SMF ¶¶ 19, and that, when Plaintiff

left the Board meeting on July 11, 2017, he understood that he had replaced Parker as Dog

Control Officer, id. ¶ 22. Plaintiff then began working as Dog Control Officer. See Am. Compl.

at 5.

On August 18, 2017, Parker gave Plaintiff a proposed independent contractor agreement

("Agreement") related to his work as Dog Control Officer. Id. ¶ 39. The agreement stated that

Plaintiff would serve as Dog Control Officer from July 11, 2017 to December 31, 2017. Id. ¶ 40;

Dkt. No. 86-11 ("Independent Contractor Agreement"). However, Plaintiff refused to sign the

Agreement. Defs.' SMF ¶ 43.

Also sometime in August, Plaintiff attended an executive session of the Town Board in

which the Board asked him to "slow down the work he was doing" because he was requesting

more travel reimbursements than the town had budgeted for. Id. ¶ 34; Kampfer Depo. at 65. At

this same meeting, the Board also told Plaintiff that a letter he had written in his capacity as Dog

Control Officer to certain town citizens was "inappropriate." Defs.' SMF ¶¶ 35–36. Plaintiff

responded that he thought the letter was appropriate. Id. ¶ 36.

Plaintiff apparently continued to discharge his duties as dog control officer for the remainder of the year, without incident, and was paid accordingly. Id. ¶¶ 43–44. Near the end of the year, in December 2017, Plaintiff received a letter from the Town Board informing him that his appointment as Dog Control Officer would end on December 31, 2017 and that he would not be reappointed. Id. ¶ 45. The Board had made this decision at an executive session held on December 12, 2017. Id. The letter further asked Plaintiff to return any town equipment he had in relation to his Dog Control Officer role, which he subsequently did on January 1 or 2, 2018. Id. ¶ 54. Plaintiff was paid in full for the work he did as Dog Control Officer from August 11, 2017 to December 31, 2017. Id. ¶ 44.

Following the expiration of Plaintiff's term as Dog Control Officer, at the January 1, 2018 organizational meeting the Board appointed Karen Wilson as Dog Control Officer for a one-year term expiring on December 31, 2018. Id. ¶ 30.

Those are essentially the facts, though one other point bears mentioning here. Plaintiff alleges in his Amended Complaint that asking him to sign the independent contractor agreement "was a violation of . . . New York['s] Agriculture and Markets Law," and that, on August 18, 2017, he filed a "formal complaint" about this alleged violation with the office of the New York State Attorney General (the "AG Complaint"). Am. Compl. at 6. However, because Plaintiff has apparently taken no discovery in this case,[3] and has submitted minimal evidence in support of his motion for summary judgment, see generally Pl.'s SMF, the Court has no evidence about the AG Complaint other than the allegations in the Amended Complaint. Plaintiff himself does not know

---

[3]  See Defs.' Mem. at 2 ("[D]uring this action Plaintiff failed to conduct a single deposition or demand a single document . . . from any named defendant – despite his knowledge and the Court's reminders to him that he had the right to do so.").

if the Attorney General's office ever followed up on this complaint or contacted any town official about it. Defs.' SMF ¶ 65.

### B. Relevant Procedural History

On January 2, 2018, two days after his term as Dog Control Officer expired, Plaintiff filed this suit. Dkt. No. 1 ("Complaint"). Then, on July 12, 2018, he filed the Amended Complaint, which the Court declared to be the operative pleading on August 31, 2018. Dkt. Nos. 48, 53.

For the sake of judicial economy, the Court notes that the remainder of this case's procedural history leading up to the instant summary judgment motions consists primarily of Plaintiff filing frivolous motions, see, e.g., Dkt. Nos. 58, 64 (attempting to add the Honorable Andrew T. Baxter, the presiding United States Magistrate Judge in this case, to Plaintiff's witness list), and attempting avoid sitting for his deposition, see, e.g., Dkt. Nos. 53, 68, 79. The Court takes this opportunity to commend Judge Baxter for his speedy, fair, and patient resolution of many of these motions.

Finally, after eventually deposing Plaintiff on December 19, 2018, Defendants moved for summary judgment on March 1, 2019. See Defs.' SJ Mot. Plaintiff filed his cross-motion on March 11, 2019. See Pl.'s SJ Mot. The Court notes here that Plaintiff's summary judgment motion is supported by only one page of legal argument and a few sparse evidentiary exhibits. See Pl.'s Mem., Exs. A–B; Pl.'s SMF. For this reason, the following discussion focuses primarily on Defendants' summary judgment motion and arguments.

### C. Plaintiff's Claims

The Amended Complaint contains four causes of action: (1) Defendants violated Plaintiff's Fifth and Fourteenth Amendment procedural and substantive due process rights by

failing to provide him with notice and a hearing related to the cessation of his position as Dog Control Officer; (2) Defendants retaliated against Plaintiff in violation of the First Amendment because he complained to the New York Attorney General about the "illegal" independent contractor agreement; (3) Defendants' actions "so shock[] the conscience of a person[] that the Defendant(s) . . . are liable to the plaintiff under the Seventh Amendment . . ."; and (4) Defendants' actions constitute "cruel and unusual punishment" in violation of the Eighth Amendment. Am. Compl. at 9–11.

Plaintiff seeks declaratory relief clarifying "what Procedural Due Process rights . . . must be applied . . . before [Plaintiff] . . . can be deprived of" "any appointments or wages." Id. at 2. Specifically, he asks the Court to clarify whether procedural due process guarantees him notice and a hearing regarding the Board's decision not to reappoint him, whether the Board violated his rights by failing to give him a "written [a]ppointment," and whether he was illegally deprived of wages after December 31, 2017. Id.

Further, the Amended Complaint initially contained a request that the Court declare whether a public official who commits a civil rights violation can be assessed punitive damages or even be held liable criminally. Id. at 3. However, with approval of the Court, Plaintiff subsequently withdrew these requests for declaratory relief. Dkt. Nos. 53, 54.

Finally, Plaintiff asks for costs and a hearing on damages subsequent to any trial on the merits. Id. at 12.

## III.    LEGAL STANDARD

FRCP 56 instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law,"

and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>; <u>see also</u> <u>Taggart v. Time, Inc.</u>, 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Id.</u> at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." <u>Gallo v. Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994).

**IV.    DISCUSSION**

The Court addresses in turn: (A) two preliminary matters; (B) the merits of Defendants' summary judgment motion as to each of Plaintiff's claims; and (C) a few final loose ends.

**A.  Preliminary Matters**

    *1.  Waiver of Arguments*

In their Reply, Defendants urge the Court to find that Plaintiff has "consented" to the arguments Defendants made in their summary judgment briefing. Defs.' Reply at 2. This is because "Plaintiff . . . failed to offer any arguments whatsoever in opposition to Defendants' Motion and, instead, merely asserts a cross-motion" that consists of a "one and a half page 'argument' . . . 'supported' solely by conclusory statements and two factually distinguishable and legally inapplicable cases . . . ." Id. at 1–2; see also Pl.'s Mem. at 4 (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985) and Kampfer v. Jacob DaCorsi, 6 N.Y.S.3d 680 (3rd Dept. 2015)) (containing the sum total of Plaintiff's argument on summary judgment). Defendants point out that, in similar circumstances, courts in this district generally deem the litigant who has failed to respond as "consenting" to the opposing party's arguments. Defs.' Reply at 2 (citing Robert H. Law, Inc. v. Woodbine Bus. Park, Inc., No. 13-CV-1393, 2018 WL 851382, at *10 (N.D.N.Y. Feb. 12, 2018) ("[W]here a non-movant has failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law . . . .") (other citations omitted)). Moreover, pointing to Plaintiff's extensive history of filing lawsuits,[4] Defendants argue that the Court should disregard Plaintiff's pro se status in this case, because

---

[4] Defendants have identified twenty-eight cases apparently filed by Plaintiff in both state and federal court since 2005. Defs.' Reply at 4 n.1.

Plaintiff is an "experienced" litigant who "do[es] not enjoy the same 'special solicitude' afforded to other pro se litigants." Defs.' Reply at 3 (citing <u>Shaheen v. McIntyre</u>, No. 05-CV-173, 2007 WL 3274835, at *7 (N.D.N.Y. Nov. 5, 2007) ("revok[ing]" pro se plaintiff's "special status" because he had filed "at least *twenty* other federal court actions . . . and at least *four* state court actions" over the previous twenty years).

Defendants' points are well-taken, however the Court is chary of granting so drastic a remedy as deeming Plaintiff to have consented to Defendants' Motion. In any event, as described below, the Court finds that Plaintiff's claims fail on the merits. As for whether to strip Plaintiff of the special status he enjoys as a pro se litigant, since Plaintiff's claims fail on the merits, the Court declines to wade through the twenty-eight prior cases Defendants have identified to determine if they really were filed by Plaintiff, if Plaintiff proceeded pro se, and whether Plaintiff was victorious. <u>See id.</u> (listing factors courts consider when deciding whether to grant a pro se litigant "special solicitude"). Plaintiff has occupied enough of the Court's time as it is.

### 2. *Individual vs. Official Capacity*

There appears to be some uncertainty as to whether Plaintiff sues Defendants in their individual or official capacities. For example, in the caption of the Amended Complaint, after the name of each defendant, Plaintiff has written "[i]ndividual capacity," Am. Compl. at 1, but later under each cause of action he lists each defendant "in their individual and in their official capacity," <u>id.</u> at 9–11. Also, in his deposition, Plaintiff agreed that he was suing the five members of the Town Board listed above and confirmed that he was not suing the Town of Mayfield itself. Kampfer Depo. at 109–10. This testimony, along with Plaintiff's earlier filings with the Court, <u>see</u> Dkt. No. 64 (letter to the Court stating that "Plaintiff is not suing the Municipality the Town of Mayfield . . . [but] is suing the Defendants in their individual

capacities"), formed the basis of Defendants' observation in their statement of material facts that "Plaintiff . . . is suing . . . Defendants in their individual capacities[] only . . . [and] is not maintaining and claims against the Town as a municipal entity," Defs.' SMF ¶¶ 66–67. However, in his Response to Defendants' SMF, Plaintiff states the contradictory propositions that he is suing Defendants in their "[i]ndividual capacities and [o]fficial capacities" but not suing the Town itself. Resp. to Defs.' SMF ¶¶ 66–67.

The Court attributes this confusion to Plaintiff failing to understand that suing a municipal official—such as a member of the Town Board—in her or his official capacity is tantamount to suing the municipality itself. See, e.g., Macera v. Vill. Bd. of Ilion, No. 16-CV-668, 2019 WL 4805354, at *10 n.5 (N.D.N.Y. Sept. 30, 2019) (Kahn, J.). However, regardless of whether Plaintiff actually intended to sue the Town and, thus, regardless of whether Plaintiff knew the import of suing Defendants in their official capacities, the Town cannot be liable through any "official capacity" claim because, as the Court explains below, Plaintiff's individual capacity claims against each Defendant fail on their own accord. Id. at *22. ("[T]he Village cannot be liable for conduct that the Court . . . determine[s] was not a constitutional violation.").

**B. Merits**

Turning to the merits of Plaintiff's claims, the Court first lays out the general requirements for bringing a claim under § 1983. In order to maintain a claim under § 1983, a plaintiff must establish "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state . . . law." Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005) (quoting Gomez v. Toledo, 446 U.S. 635, 640 (1980) (internal quotations omitted)); United States v. Int'l Bhd. of Teamsters, 941 F.2d 1292, 1295–96 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private

parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'"). "Section 1983 is not itself a source of substantive rights[,] but merely provides a method for vindicating federal rights elsewhere conferred[.]" Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).

Bearing these rules in mind, the Court now addresses each of Plaintiff's claims.

### 1. Fourteenth Amendment Procedural Due Process[5]

Defendants argue that "Plaintiff had no property interest in continued employment after December 31, 2017, and thus was not entitled to any procedural due process." Defs.' Mem. at 9. The Court agrees.

The Due Process Clause of the Fourteenth Amendment contains both a procedural and substantive component. Zinermon v. Burch, 494 U.S. 113, 125 (1990). The procedural component bars "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' . . . without due process of law." Rotundo v. Vill. of Yorkville, No. 09-CV-1262, 2011 WL 838892, at *7 (N.D.N.Y. Mar. 4, 2011) (citing Zinermon, 494 U.S. at 125). "To establish a procedural due process violation, a plaintiff 'must: (1) identify a property right; (2) establish that governmental action with respect to that property right amounted to a deprivation; and (3) demonstrate that the deprivation occurred without due process.'" Macera, 2019 WL 4805354, at *12 (quoting Rosa R. v. Connelly, 889 F.2d 435, 438 (2d Cir. 1989), cert. denied,

---

[5] Plaintiff also purports to bring his due process claims under the Fifth Amendment. However, "because his due process claims are against state, not federal, actors, . . . the Fourteenth Amendment, rather than the Fifth Amendment, applies to these claims." Wolff v. State Univ. of New York Coll. at Cortland, No. 13-CV-1397, 2016 WL 9022503, at *16 (N.D.N.Y. Feb. 5, 2016) (citing Bussey v. Phillips, 419 F. Supp. 2d 569, 586 (S.D.N.Y. 2006)), aff'd sub nom. Wolff v. State Univ. of New York, 678 F. App'x 4 (2d Cir. 2017).

496 U.S. 941 (1990)). "Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Facci-Brahler v. Montgomery Cty., No. 18-CV-941, 2020 WL 360873, at *8 (N.D.N.Y. Jan. 22, 2020) (Kahn, J.) (citing Coles v. Erie Cty., 629 F. App'x 41, 42 (2d Cir. 2015). "In the [public] employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship without cause." S & D Maint. Co. v. Goldin, 844 F.2d 962, 967 (2d Cir. 1988). "The party asserting due process rights has the burden of establishing a legitimate property interest in continued employment." Jones v. Town of Whitehall, No. 13-CV-806, 2015 WL 4603511, at *5 (N.D.N.Y. July 30, 2015) (Kahn, J.).

Here, Plaintiff has failed to meet his burden of raising a genuinely disputed issue of material fact as to whether he had a property interest in continued employment. First, Plaintiff was not a "covered employee" under New York Civil Service Law § 75, which provides civil service protections to certain categories of public employees. See id. at *6 (citing N.Y. Civ. Serv. Law § 75). New York Civil Service Law § 75 does not apply to the Dog Control Officer position because there is no evidence in the record that: "(a) the [Dog Control Officer] was . . . a competitive class position; (b) Plaintiff was . . . honorably discharged from the armed forces of the United States; (c) Plaintiff [held] [his] position for five years continuously; (d) Plaintiff was . . . a Homemaker or Home Aide in New York City with at least three years of continuous service; [or] (e) Plaintiff [was] a police officer."[6] Defs.' Mem. at 11. Indeed, Plaintiff does not

---

[6] As Defendants make clear in their statement of material facts, Plaintiff admitted in his deposition that he had never served in the military, never taken a civil service exam, and never seen a civil service application or job description for the Dog Control Officer position. Defs.' SMF ¶¶ 5, 6, 10, 11.

13

allege or argue that any of these categories laid out in the statute cover the Dog Control Officer position. See generally Am. Compl.; Pl.'s Mem.[7] Further, New York State Agriculture and Markets Law § 113, which governs the appointment of local dog control officers and which Plaintiff does cite to in his briefing, id. at 3, says nothing about the duration of appointments made under that section or civil service protections for those appointed. See N.Y. Agric. & Mkts. Law § 113. Nothing in these relevant statutory provisions gives Plaintiff "a legitimate property interest in [his] continued employment." See Jones, 2015 WL 4603511, at *6.

Without a statutory basis for his alleged property interest in continued employment, Plaintiff must raise a triable issue of fact that he had a contractual basis for his interest. See S & D Maint. Co., 844 F.2d at 967. Yet here too, Plaintiff has failed to do so. Plaintiff admits that he refused to sign the employment Agreement presented to him by the Board, Kampfer Depo. at 95, and, in fact, admits that he had no written contract with Defendants at all. See Pl.'s Mem. at 4 ("Defendants did not have a valid written . . . contract [with Plaintiff]"); Kampfer Depo. at 52.[8] Nor is there evidence in the record that any Defendant made an oral representation to Plaintiff that he was being appointed for anything more than the remainder of Parker's term as Dog Control Officer. See Defs.' SMF ¶¶ 19, 22, 55–56; see generally Pl.'s SMF. This undisputed evidence dooms Plaintiff's claim.

---

[7] Without much explanation, Plaintiff instead cites to Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985), a case that discussed the procedural due process rights of a public employee who enjoyed "classified civil servant" protections under Ohio law. Id. at 535. However, because New York Civil Service Law § 75 does not apply to Plaintiff's position, and therefore the Dog Control Officer position does not enjoy civil service protections, Cleveland Board is inapposite.

[8] "Q: You never signed any contract with the Town of Mayfield that related to the dog control officer position, correct?
A: No, I did not."

Plaintiff may have personally believed that his appointment was "permanent," id. at 140, and the oath of office form may not have listed the dates of Plaintiff's appointment when he signed it, but "an employee must have more than a unilateral expectation of continued employment" to establish a property interest sufficient to maintain a procedural due process claim. Jones, 2015 WL 4603511, at *6. Here, it appears to be undisputed that no Defendant—or any other town official—represented to Plaintiff that his appointment was for anything more than the remainder of Parker's 2017 term as Dog Control Officer, Defs.' SMF ¶¶ 19, 22, 42, that the practice in Mayfield had always been to appoint the Dog Control Officer for year-long terms, id. ¶ 64, that Plaintiff had been appointed annually to his cemetery caretaker position in the past, id. ¶ 2, and that Defendants intended to appoint Plaintiff only for the remainder of Parker's term, see Argotsinger Decl.; Putnam Decl.; Van Allen Decl.; Ruliffson Decl.; Coletti Decl. Therefore, there is no evidence that Plaintiff had anything other than a "unilateral expectation" that his appointment was permanent, and Plaintiff has not raised a triable issue of fact as to whether he had constitutionally protected property interest. See Jones, 2015 WL 4603511, at *7 (no constitutionally protected property interest where plaintiff "assert[ed] that she believed that she could only be fired for misconduct . . . and that it was customary for other appointed employees to be reappointed each year"). Without such a property interest, his procedural due process claim fails. See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 578 (1972) (where a public employee's appointment terminated on a certain date and there was no specific provision for renewal after that date, the employee "did not have a property interest sufficient to require . . . a hearing when [officials] declined to renew his contract of employment").

Further, to the extent Plaintiff's procedural due process claim is based on the Board's alleged failure to give him a "written appointment," see Am. Compl. at 2, the claim also fails.

Plaintiff's evidence, such as it is, does not raise a triable issue of fact as to whether he had a "legitimate claim of entitlement" to receive a document memorializing his appointment as Dog Control Officer. See Kapps v. Wing, 404 F.3d 105, 113 (2d Cir. 2005) ("[A] property interest arises only where one has a legitimate claim of entitlement to the benefit . . . .") (internal quotation marks omitted). Plaintiff points to two state statutes that purportedly support his claim: New York Agriculture and Markets Law § 113 and New York Town Law § 25. Pl's Mem. at 4. But neither of these statutes require the Town Board to provide an appointed Dog Control Officer with any such writing. See generally N.Y. Agric. & Mkts. Law § 113; N.Y. Town Law § 25. Nor is the Court aware of any other statutory provision that would require the Board to provide Plaintiff with the kind of "written appointment" he demands.

In support of Plaintiff's summary judgment motion he submitted excerpts from the New York Department of Agriculture and Markets' "Dog Control Officer & Municipal Shelter Guide," which says that "[a]ll appointments and/or contracts must be in writing." Pl.'s SMF, Ex. A. Yet this document specifically states that it is a "summar[y] of laws and regulations" and "not meant to replace" them. Id. And when the Board presented Plaintiff with a contract memorializing the terms of his appointment—as contemplated by this Guide—Plaintiff refused to sign it. Plaintiff's claim, then, appears to be based on nothing more than a "unilateral expectation" of receiving a different, undefined sort of "written appointment," and no reasonable jury could find that he had a legitimate claim of entitlement to receiving that writing. The Court therefore grants summary judgment to Defendants.[9]

---

[9] Plaintiff also lacks any claim to "unpaid" or "back" wages, as it is undisputed that he was paid in full for the work did as Dog Control Officer from August 11, 2018 to December 31, 2017, Defs.' SMF ¶ 44, and the Court finds that none of his cognizable federal rights were violated when the Board declined to reappoint him.

## 2. *Fourteenth Amendment Substantive Due Process*[10]

Defendant argues that Plaintiff's substantive due process claim fails because, once again, Plaintiff "has not, and cannot, demonstrate any property interest in continued employment . . . and he is unable to offer evidence of any consci[ence]-shocking state action by any Defendant." Defs.' Mem. at 16. The Court agrees.

"The substantive component [of the due process clause] bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." Rotundo, 2011 WL 838892, at *7. "To establish that defendants violated plaintiff's substantive due process rights, the Court must first inquire 'whether a constitutionally cognizable property interest is at stake.'" Scaccia v. Stamp, 700 F. Supp. 2d 219, 235 (N.D.N.Y. 2010) (quoting Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995)), aff'd, 447 F. App'x 267 (2d Cir. 2012). "Second, the Court must determine whether Defendants acted in an arbitrary or irrational manner in depriving [Plaintiff] of that property interest." Facci-Brahler, 2020 WL 360873, at *9 (internal quotation marks omitted). "With regard to the second element, 'a plaintiff must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Doe v. Patrick, No. 17-CV-846, 2020 WL 529840, at *8 (N.D.N.Y. Feb. 3, 2020) (Kahn, J.) (quoting Okin v. Village of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 431 (2d Cir. 2009) (other quotation marks omitted).

As described above, Plaintiff has failed to establish a triable issue of fact as to whether he had a constitutionally protected property interest in his position as Dog Control Officer. But even if he had, his substantive due process claim would fail because "[t]he Second Circuit has never

---

[10] For the same reasons as those stated above in Footnote 5, Plaintiff's substantive due process claim purportedly brought under the Fifth Amendment fails.

articulated a fundamental interest in public employment giving rise to substantive due process protection." Mathirampuzha v. Potter, No. 08-CV-682, 2010 WL 55061, at *9 (D. Conn. Jan. 4, 2010), aff'd sub nom. Mathirampuzha v. Donahoe, 423 F. App'x 108 (2d Cir. 2011). Further, "other courts have explicitly declared that there is no such interest." See Nichik v. New York City Transit Auth., No. 10-CV-5260, 2013 WL 142372, at *12 (E.D.N.Y. Jan. 11, 2013) (citing Nicholas v. Pa. State Univ., 227 F.3d 133, 142 (3d Cir. 2000) (joining the "great majority of courts of appeals" in holding that "tenured public employment" is not a "fundamental property interest entitled to substantive due process protection); McKinney v. Pate, 20 F.3d 1550, 1553, 1560 (11th Cir. 1994) (en banc) (state-created property interest in employment does not give rise to substantive due process claim)). Additionally, where the undisputed evidence is that the Board declined to reappoint Plaintiff because he had acted inappropriately with certain town residents, see Argotsinger Decl. ¶ 17, there is no evidence that Defendants' decision was so arbitrary or outrageous that it would constitute a substantive due process violation. See Mathirampuzha, 2010 WL 55061, at *9 ("Given the legitimate reason advanced for Ms. Mathirampuzha's termination . . . terminating her . . . hardly shocks the conscience."). For all these reasons, the Court grants Defendants' summary judgment motion as to Plaintiff's substantive due process claims.

### 3. First Amendment Retaliation

Defendants argue that Plaintiff's First Amendment retaliation claim fails because, as a public employee, his speech about his role as Dog Control Officer is not protected. Defs.' Mem. at 18–22. The Court agrees that Plaintiff's claim fails, but grants Defendants' motion primarily on the basis that Plaintiff has not raised a triable issue of fact as to causation.

To survive a motion for summary judgment on a First Amendment retaliation claim, a plaintiff must present evidence: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Myers v. Municipality of Greene Cty., No. 19-CV-325, 2020 WL 204296, at *5 (N.D.N.Y. Jan. 14, 2020) (Kahn, J.). A public employee's work-related speech is protected "when he or she is speaking 'as a citizen upon matters of public concern.'" Raymond v. City of New York, 317 F. Supp. 3d 746, 772 (S.D.N.Y. 2018) (quoting Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)). If a plaintiff establishes a triable issue of fact as to all three elements of the retaliation claim, including that her or his speech was delivered as a citizen on a matter of public concern, "the defendant [then] has the opportunity to show by a preponderance of the evidence that it would have taken the same adverse employment action even in the absence of the protected conduct." Nagle v. Marron, 663 F.3d 100, 105 (2d Cir. 2011).

Here, the alleged basis for Plaintiff's retaliation claim appears to be his AG Complaint about the Board's request that he sign an "illegal" independent contractor agreement. See Am. Compl. at 9–10. Plaintiff's retaliation claim on this basis fails, however, because there is no evidence of causation. The record contains no evidence that any member of the Town Board knew about Plaintiff's complaint when they decided not to reappoint Plaintiff in December 2017. Indeed, Plaintiff acknowledges that he has no evidence that the Attorney General's office ever contacted any town official about his complaint. See Resp. to Defs.' SMF. Without any admissible evidence that Defendants knew about his complaint, Plaintiff has not met his burden to raise a triable issue of fact as to whether his AG Complaint *caused* Defendants' decision not to reappoint him. Cf. Kim v. Columbia Univ., 460 F. App'x 23, 25 (2d Cir. 2012) (describing how

a plaintiff can show retaliation through adverse actions taken soon after an "employer[] [had] knowledge of [the] protected activity").

Admittedly, "a plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action." Gorman–Bakos v. Cornell Coop. Extension of Schenectady Cnty., 252 F.3d 545, 554 (2d Cir. 2001) (internal quotation marks and citation omitted). However, without any direct evidence of retaliatory animus, the four-month time period between Plaintiff's complaint on August 18, 2017 and the Board's decision not to reappoint him on December 12, 2017 is too long to establish an inference of causation. See Dillon v. Suffolk Cty. Dep't of Health Servs., 917 F. Supp. 2d 196, 214 (E.D.N.Y. 2013) ("[C]ourts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation.").[11]

Nor does it appear that Plaintiff has raised a triable issue of fact as to whether his AG Complaint was on a matter of a public concern. Speech "on a matter of public concern" "relat[es] to any matter of political, social, or other concern to the community." Nagle, 663 F.3d at 106 (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)). Assuming for the sake of argument that Plaintiff's AG Complaint reported an actual crime, "[n]o authority supports [the] argument that [merely] reporting an alleged crime [necessarily] implicates matters of public concern." Id. at 107. Here, where there is "no[] claim that the [allegedly illegal act] revealed an ongoing pattern

---

[11]  To the extent Plaintiff's retaliation claim is based on his refusal to sign the independent contractor agreement, assuming for the sake of argument that such a refusal constitutes protected conduct, the claim fails for the same reason. The time period between August—when Plaintiff refused to sign the Agreement—and December—when the Board declined to reappoint him—is too long, without other evidence of retaliatory animus, to establish an inference of causation. Id.

of conduct or even a particularly important instance of bad judgment on [the Defendant's] part," Plaintiff has failed to show that the Board's allegedly illegal attempt to get him to sign an independent contract agreements was "a matter of public concern." Id. at 108 (where a public school teacher alleged that she was not granted tenure in retaliation for reporting an assistant principal who had forged her signature, stating that "even if [the act of forgery] were criminal, [it] had no practical significance to the general public").

For all these reasons, the Court grants Defendants' motion for summary judgment on this claim.

### 4. Seventh Amendment

Plaintiff's third cause of action purports to bring claims under the Seventh Amendment. See Am. Compl. at 10–11. Specifically, Plaintiff alleges that "[t]he actions of Defendant(s) . . . using the[] power of their respective offices . . . to deprive the Plaintiff of his First, Fifth and Fourteenth Amendment Rights . . . so shocks the conscience of a person[] that the Defendant(s) . . . are liable to the plaintiff under the Seventh Amendment . . . ." Id. But Plaintiff misunderstands the law. The Seventh Amendment "preserve[s]" "the right of trial by jury" for certain cases brought in a federal court. See Messa v. Goord, 652 F.3d 305, 308 (2d Cir. 2011) (citing U.S. Const. amend. VII). It does not, however, "provide[] a basis for an additional cause of action" cognizable under § 1983. See White v. City of New York, No. 13-CV-7156, 2014 WL 4357466, at *8 n.13 (S.D.N.Y. Sept. 3, 2014). Therefore, "[t]he Court construes Plaintiff's citation to the Seventh Amendment as support for h[is] request for a civil jury trial," rather than as an independent basis for relief. Id.

Additionally, because Plaintiff has made no allegations—other than the statement quoted in the previous paragraph—and submitted no evidence that his Seventh Amendment rights were

violated, the Court dismisses any claims purportedly brought under the Seventh Amendment. <u>See</u> <u>Guttilla v. City of New York</u>, No. 14-CV-156, 2015 WL 437405, at *10 (S.D.N.Y. Feb. 3, 2015) (dismissing purported Seventh Amendment claim brought under Section 1983 where plaintiff "allege[d] nothing to support a Seventh Amendment claim; she merely list[ed] that amendment in the complaint as a source of law purportedly violated by Defendants").

### 5. *Eighth Amendment*

Plaintiff's Eighth Amendment claim also fails as a matter of law. "The Eighth Amendment's prohibition of 'cruel and unusual punishment' applies only to those who have been convicted of a crime and sentenced, and are thus suffering the 'punishment' contemplated by the Cruel and Unusual Punishment Clause." <u>Balkum v. Sawyer</u>, No. 06-CV-1467, 2011 WL 5041206, at *9 (N.D.N.Y. Oct. 21, 2011); <u>see also</u> <u>Jackson v. Johnson</u>, 118 F. Supp. 2d 278, 286 (N.D.N.Y. 2000), <u>aff'd in part, dismissed in part</u>, 13 F. App'x 51 (2d Cir. 2001) ("The Eighth Amendment 'was designed to protect those convicted of crimes . . . .'") (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 318 (1986). Plaintiff has neither alleged nor submitted evidence demonstrating that he was convicted of, or sentenced for, any crime. Therefore, he cannot bring a claim under the Eighth Amendment.

### C. Loose Ends

Because the Court dismisses Plaintiff's claims on the above grounds, there is no need to address Defendants' alternative arguments as to legislative immunity, qualified immunity, or personal involvement. <u>See generally</u> Defs.' Mem. Additionally, before closing, the Court notes here that there are some allegations in Plaintiff's summary judgment briefing that it disregards. Specifically, Plaintiff makes several statements that appear to accuse defense counsel of violating Plaintiff's rights. <u>See</u> Pl.'s Mem. at 4 ("[T]he Defendants and their attorney Gregg T.

Johnson on May 14, 2018 engaged in a State Action to deprive myself of the Procedural Due Process I was due on July 11, 2017, by refusing to entertain my request to settle this matter . . . .”); Pl.’s SMF ¶ 6. These allegations are not found in the Amended Complaint and therefore are inappropriate to include in summary judgment briefing. <u>See</u> <u>Southwick Clothing LLC v. GFT (USA) Corp.</u>, No. 99-CV-10452, 2004 WL 2914093, at \*6 (S.D.N.Y. Dec. 15, 2004) (“A complaint cannot be amended merely by raising new facts and theories in plaintiffs’ opposition papers, and hence such new allegations and claims should not be considered in resolving the [summary judgment] motion.”).

## IV.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants’ motion for summary judgment (Dkt. No. 86) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff’s motion for summary judgment (Dkt. No. 87) is **DENIED**; and it is further

**ORDERED**, that the Amended Complaint (Dkt. No 39) is **DISMISSED in its entirety**; and it is further

**ORDERED**, that the Clerk shall close this action; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      February 25, 2020
            Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge